## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 3:25-CV-498-SMY |
| | ) |
| FRANK BISIGNANO, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Michelle L. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") benefits pursuant to 42 U.S.C. § 423. For the following reasons, the decision of the Commissioner of Social Security is **AFFIRMED**.

### Procedural History

Plaintiff protectively filed for DIB on April 27, 2020, alleging a disability onset date of May 16, 2019 (Tr. 230-32)[2]. Plaintiff's application was initially denied on May 6, 2021, (Tr. 163-66) and again upon reconsideration on August 20, 2021 (Tr. 168-73). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place via telephone on June 28, 2022 (Tr. 193-198). The ALJ issued an unfavorable decision on August 25, 2022 (Tr. 12-31). After the Appeals Council declined her request for review (Tr. 1-6), Plaintiff filed a Complaint, seeking

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

[2] Plaintiff originally filed an application for DIB on January 2, 2017, which was denied upon review by an ALJ on May 15, 2019. That decision was affirmed by this Court on July 28, 2022. Plaintiff's current claim alleges a disability onset date subsequent to the prior decision.

review of the agency's decision on March 3, 2023 (Doc. 1 in 3:23-cv-00790-MAB).  That case was remanded on joint stipulation of the parties on January 5, 2024. (Tr. 732-734).

On June 5, 2024, the Appeals Council issued an order remanding the case back to the ALJ (Tr. 1970-75).  The Appeals Council noted that the ALJ's decision did not adequately address findings by state agency medical consultants that Plaintiff must periodically alternate sitting and standing to relieve pain and discomfort. (*Id.*).  Therefore, the Appeals Council directed the ALJ to give further consideration to these findings in determining Plaintiff's maximum residual functional capacity.  (*Id.*)

A second hearing before the ALJ was held on November 22, 2024, and the ALJ issued a second unfavorable decision on January 31, 2025 (Tr. 645-74).  Because Plaintiff did not file written exceptions to the Appeals Council, the decision of the ALJ became the final decision of the Commissioner.  Plaintiff initiated the present action seeking review of the final decision of the Commissioner on April 2, 2025  (Doc. 1).

## **Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ failed to develop the record regarding x-rays of her lumbar spine taken after the state agency consultants issued their opinions.

2. The ALJ failed to evaluate the opinions from the state agency physicians.

3. The ALJ failed to properly consider the impact of a moderate limitation in concentration persistence, and pace on Plaintiff's residual functional capacity.

## **Legal Standard**

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if he or she has an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ follows a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. At step two, the ALJ must determine whether the claimant has a severe, medically determinable impairment or combination of impairments. At step three, the ALJ must determine whether the claimant's impairments meet or medically equal one of a list of specific impairments enumerated in the regulations. At step four, the ALJ must determine whether the claimant has the Residual Functional Capacity ("RFC") to perform past relevant work. Finally, at step five, the ALJ must determine whether the claimant is able to perform any other work considering their RFC, age, education, and experience. *Id.*

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The claimant bears the burden of proof at steps one through four. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez*

*ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

On remand, the ALJ reconducted his analysis and followed the five-step analytical framework with respect to Plaintiff's application.  As a threshold matter, the ALJ determined that Plaintiff's date last insured was December 31, 2021, meaning Plaintiff must establish she was disabled on or before this date (Tr. 1884).  The ALJ then determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (*id.*).

The ALJ found that Plaintiff had the following severe impairments: degenerative disk disease, left carpal tunnel syndrome, trigger fingers bilaterally, type II diabetes, fibromyalgia, polyarthralgia, right wrist fracture, frozen right shoulder, moderate high frequency sensorineural hearing loss, Crohn's disease, obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD") (Tr. 1884).  The ALJ concluded that Plaintiff's impairments did not meet or equal any of the listed impairments in the regulations, noting that Plaintiff had a moderate limitation in concentration, persistence, and maintaining pace with detailed/complex instructions, but no such limitation with simple instructions (Tr. 1887).

The ALJ determined Plaintiff had following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions and limitations. She could not climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could not complete overhead tasks, and could not be exposed to whole body vibration. The claimant could frequently speak on the telephone, but not constantly. She could have no concentrated exposure to extreme heat or extreme cold. She could tolerate maximum environmental noise at moderate code 3 as defined by the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations. She could frequently handle and finger bilaterally. The claimant was limited to understanding, remembering and carrying out simple instructions with occasional interaction with coworkers and supervisors, but could have no interaction with the general public.

(Tr. 1889).

In assessing Plaintiff's RFC, the ALJ reviewed the treatment records from before, during, and after the relevant time period, and the medical opinions of the state agency physicians Dr. James Hinchen and Dr. Mila Bacalla, and psychologists M. W. DiFonso and Richard Hamersma.   The ALJ also considered Plaintiff's subjective testimony regarding her physical and mental health symptoms, her reported daily activities and third-party reports from her spouse and friend (Tr. 1894-95).  The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects of those symptoms was not consistent with the medical and non-medical evidence in the record (Tr. 1890-96).

The ALJ found the opinions of state agency psychologists Drs. DiFonso and Hamersma largely persuasive and generally consistent with the record as a whole, even though the ALJ's RFC determination was ultimately more limiting than stated in their opinions (Tr. 1889).  The ALJ also clarified that the noted moderate limitation in concentration, persistence, and pace applied only to detailed/complex instructions, not simple ones.  The ALJ based this on Plaintiff's reported daily activities, including tasks that are more advanced than simple, and the notations of largely normal attention and concentration in the record (*id.*).

The ALJ found the opinions of the state agency physicians partially persuasive but found their proposed limitations to be inconsistent with the objective medical evidence (Tr. 1894). Specifically, the ALJ noted a lack of objective and clinical findings to support a limitation to standing or walking only two hours in a workday or the need to alternate between sitting and standing outside of regular breaks.  The ALJ also noted that Plaintiff had been routinely observed with a normal gait, that no treating source had ever opined that Plaintiff was limited in standing or that there was a medical need to alternate positions every hour, and that there had been no recommendations for additional spinal surgery or ongoing narcotics (Tr. 1894-94).  Finally, he noted that although Plaintiff complained of a "bone-on-bone" condition in her lumbar spine, no imaging in the record demonstrated such a condition (Tr. 1891-92).

The ALJ acknowledged that the third-party function reports from Plaintiff's spouse and friend indicated limitations to those reported by Plaintiff, referred to Plaintiff's pain when sitting for long periods, and described various mental health symptoms (Tr. 1895).  However, he found these reports unpersuasive due to their subjective nature, and also noted the reports listed daily activities suggesting Plaintiff was not limited to simple tasks.

After providing an explanation for his RFC determination, the ALJ found that Plaintiff was unable to perform her past relevant work as a dispensing optician as of the date last insured (Tr. 1896).  However, based on the testimony of a Vocational Expert given at the hearing, the ALJ further found that Plaintiff could perform the following representative jobs: routing clerk (DOT #222.687-022); price marker (DOT #209.587-034); router (DOT #222.587-038); eyeglass frame polisher (DOT #713.684-038); table worker (DOT #739.687-182); and touch up screener (DOT #726.684-110).  Thus, the ALJ concluded Plaintiff had not been disabled as defined in the Social Security Act from the alleged onset date through the date last insured (Tr. 1897-98).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order.  The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff alleged her disability arose from the following conditions: diabetes, fibromyalgia, degenerative disk disease ("DDD"), spinal stenosis, plantar fasciitis, non-alcoholic cirrhosis, ulcers, irritable bowel syndrome ("IBS"), costochondritis, hypothyroid, sleep apnea, depression, anxiety, and memory issues (Tr. 254).  In her function report, Plaintiff stated that pain from spinal stenosis made it difficult to work on a computer for longer than 10 minutes, and her lower back pain prevented her from sitting for longer than 20-30 minutes (Tr. 298).  Her symptoms limited her to cooking relatively simple meals, showering every two or three days, and dressing in comfortable gym clothes unless her husband could help her dress.  She was able to regularly drive to appointments and run errands such as grocery shopping, but tried to limit herself to short trips buying a small number of items (Tr. 300-01).

### Evidentiary Hearing

The second hearing on remand was held on November 22, 2024, during which Plaintiff was represented by counsel (Tr. 1909).  Vocational Expert ("VE") Delores Elvira Gonzalez was also present.  Plaintiff testified her chronic back conditions were the most significant issue preventing her from working, in addition to diabetes and mental health concerns (Tr. 1916).  She

testified that sitting or standing in one spot exacerbates her back pain and that she could only sit for ten to fifteen minutes before needing to change positions (Tr. 1917-18).

The VE testified that given the hypothetical RFC posed by the ALJ, several jobs existed in the national economy for an individual of Plaintiff's age, education, and work history (Tr. 1962). When asked how a limitation to sedentary work would affect the hypothetical, the VE listed three occupations that would be available in numbers of less than 2,000 each, stating this was a representative sample (Tr. 1926). When asked how often an individual would be able to alternate positions and still perform these jobs, the VE testified that only one of the representative jobs at the light level and one at the sedentary level could be performed while alternating positions (Tr. 1927-28). Plaintiff's counsel then asked the VE whether the jobs cited allowed for additional breaks outside the standard amount provided. The VE responded that such breaks could be allowed either with accommodation or if they fell within an acceptable amount of off-task behavior, between 0-10% of scheduled time (Tr. 1929).

### Relevant Medical Records

At the initial determination stage, Dr. Hinchen reviewed Plaintiff's treatment records from the relevant time period and found evidence of moderate degenerative disk disease ("DDD"), facet arthropathy, and moderate to severe central spinal stenosis, but noted exams indicated normal gait and good coordination (Tr. 112). He noted his assessment was limited due to the DDD of the lumbar and cervical spine (Tr. 109). He also noted that Plaintiff and her husband both claimed she was unable to sit or stand for extended periods without alternating position, and found that limitation was consistent with the severe DDD. He found Plaintiff was limited to standing two hours in an eight-hour workday (*id.*). The agency noted that a consultative evaluation was necessary, but there is no indication in the record that one was ever performed (Tr. 103).

With respect to mental impairments, Dr. DiFonso found that Plaintiff's cognitive and attentional skills were intact and adequate for simple one-tow step and multi-step tasks, but Plaintiff was moderately limited in carrying out detailed tasks due to depression and other mental health conditions (Doc. 117).

At the reconsideration stage, Dr. Bacalla noted that although Plaintiff claimed worsening impairments, no evidence was received from medical sources to support this claim (Tr. 147). She found that Plaintiff's history of DDD and spinal stenosis could reasonably cause discomfort from prolonged sitting/standing, which would warrant alternation between sitting and standing during typical breaks and lunch periods and limited her to standing for two hours per workday (Tr. 144-47). Dr. Hamersma concluded the extent of Plaintiff's claimed memory and concentration limitations were not supported by the objective medical evidence (Tr. 142).

After the above reports were issued, Plaintiff had additional x-ray imaging of her lumbar spine performed on September 1, 2021, at Anderson Hospital in Maryville, Illinois for complaints of bilateral lower limb pain. Dr. Jonathan Sehy reviewed the x-rays and noted severe facet joint osteoarthritis from L5 to S1, moderate decreased disc height between L2 and L3, and endplate osteophytes at most levels. His impression was mild lumbar spondylosis (Tr. 1642).

### Discussion

Plaintiff first argues the ALJ failed to develop the record by not soliciting a medical opinion to interpret the results of her September 2021 x-rays, and impermissibly interpreted the x-rays himself in deciding they did not support a limitation to sedentary work. She further argues the ALJ erred in finding the x-rays did not support her allegation that she had a "bone-on-bone"

condition in her lumbar spine because the facet joint osteoarthritis identified in the x-rays can be described as "bone-on-bone." *Id.*

ALJs "may not play[ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation omitted). However, "[a]n ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Here, the ALJ considered treatment records from after the September 2021 x-rays and found they did not support the degree of limitation alleged by Plaintiff (Tr. 1894). The ALJ also considered treatment records postdating the date last insured, December 31, 2021, none of which indicated worsening lumbar symptoms after the relevant x-rays were taken or that Plaintiff had been recommended or sought further treatment for back pain until 2024 (Tr. 1649-1877, 2080-3089). Given this evidence, there was no need for the ALJ to seek additional medical opinions regarding the September 2021 x-rays.

Even assuming the ALJ erred in stating the x-rays did not indicate a "bone-on-bone" condition, this would be harmless error. Accepting the September 2021 x-rays as evidence of an additional severe impairment would only impact step one of the analysis; whether Plaintiff's severe impairments could reasonably be expected to result in her alleged symptoms. Because the ALJ previously determined that her existing impairments could cause her symptoms, any failure to consider evidence of facet joint osteoarthritis would not change the outcome unless there was evidence the resulting symptoms limited Plaintiff's ability to work beyond what the ALJ had already determined. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("[The issue] is not the existence of these various conditions … but their severity and, concretely, whether … they have caused [Plaintiff] such severe pain that she cannot work full time.") Again, Plaintiff's

treatment records subsequent to the September 2021 x-rays did not indicate worsening symptoms in Plaintiff's lower back.

Next, Plaintiff asserts the ALJ failed to properly evaluate the opinions from the state agency physicians, both of whom limited Plaintiff to standing for two hours in an eight-hour workday. Citing *Beardsley v Colvin*, 758 F.3d 834 (7th Cir. 2014), she argues the ALJ was required to provide a good explanation for discounting the opinions of the agency's own examining physicians, and that he failed to do so because he did not explain how evidence of a normal gait and strength is inconsistent with a limitation to standing for two hours.

Plaintiff is incorrect. The holding in *Beardsley* was based on 20 C.F.R. §§ 404.1527(c)(2), which now only applies to applications filed before 2017. For applications filed after 2017, no deference or specific evidentiary weight is given to prior administrative medical findings. § 404.1520c(a). As such, it was permissible for the ALJ to discount Dr. Hinchen and Dr. Bacalla's opinions based on the lack of any treating source concurring with their conclusions, their relatively brief analysis of the evidence, the conservative recommended treatment, and the lack of imaging demonstrating ongoing nerve root impingement or spinal cord compression (Tr. 1894-94).

Finally, Plaintiff asserts the ALJ failed to properly incorporate a moderate limitation in concentration, persistence, and pace in her RFC determination. Specifically, citing *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), she argues the ALJ's determination that the limitation only applied to detailed and/or complex tasks but not simple ones was inconsistent with Seventh Circuit precedent,. However, as the Commissioner correctly notes, *Martin* and the cases it relies upon were decided in the context of claims filed before 2017. In opinions interpreting the post-2017 amendments to the regulations, the Seventh Circuit has found a moderate limitation in concentration, persistence, and pace to be consistent with a limitation to simple tasks, so long as

the limitation is supported by narrative medical evidence.  *See, e.g.*, *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("[A] 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.")

Here, the ALJ supported his finding that Plaintiff had no limitation in carrying out simple tasks by pointing to examinations that indicated normal attention and concentration and Plaintiff's ability to carry out various typical activities of daily living (Tr. 1893-94).  Moreover, state agency psychologist Dr. Hamersa opined that although Plaintiff was moderately limited in her ability to carry out detailed instructions, she was not significantly limited in carrying out very short and simple instructions (Tr. 150).  The ALJ's decision was therefore supported by substantial evidence.

## Conclusion

After careful review of the record, the Court finds the ALJ's decision is supported by substantial evidence.   Therefore, Plaintiff Michelle L.'s Complaint for review of the Commissioner's denial of Disability Insurance Benefits (Doc. 1) is **DENIED**, and the final decision of the Commissioner of Social Security is **AFFIRMED**.   The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security and close this case accordingly.

**IT IS SO ORDERED.**

**DATED:  March 30, 2026.**

_____
**STACI M. YANDLE**
**Chief U.S. District Judge**